CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 1 0 2010

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DONELL J. BLOUNT, ET AL., | ) | Case No. 7:10CV00343 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | |
| | ) | |
| OFFICER JUSTIN OWENS, ET AL., | ) | By: Hon. Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendants. | ) | |

Plaintiff Donell J. Blount, a Virginia inmate proceeding pro se, filed a pleading styled as a

"Motion for Temporary Restraining Order While Plaintiffs Exhaust Administrative Remedies."

Because the motion is seeking vindication of the inmate's right to free exercise of religious

beliefs, the court also construes this pleading as a complaint, pursuant to 42 U.S.C. § 1983, with

jurisdiction vested under 28 U.S.C. § 1343.  In his complaint, Blount alleges that prison officials

at Red Onion State Prison have denied him the right to participate in the religious ceremony of

Ramadan, beginning August 11, 2010, in violation of his religious beliefs.  In the complaint and

a motion to amend, Blount names three other inmates who are allegedly also being denied the

right to participate in Ramadan and wish to be listed as plaintiffs in this action:  Michael Boone,

Norman Goode, and Gary W. Cotton.  Upon review of the record, the court finds that the

complaint must be dismissed and his motion for interlocutory injunctive relief must be denied.

## I. Background

Blount alleges the following sequence of events on which his claims are based.  On June 9,

2010, Blount was released from in-cell restraints and had his personal property returned.  The

following property items were not returned to him:  his Bible, his Koran, and a publication

entitled "Peak of Eloquence," an Islamic text.  On June 16, 2010, Blount received a notice that

these publications had been confiscated and that they would be "brought back for him to exchange the next week." The books were not returned, however. Blount filed a complaint form, and the response indicated that the books would be returned. When they were not returned, Blount proceeded to the next step of the grievance procedure by filing a regular grievance. On July 21, 2010, Owens told Blount verbally that he would not return the books unless Blount withdrew the grievance. Blount "expressed his need for his religious books and his right/requirement to file his grievance." At the time he signed and dated his complaint on July 30, 2010, the books had not been returned. Blount asserts that without his religious books, he cannot practice his religious beliefs.

On July 30, 2010, Food Service Supervisors James Wade and Ms. Salyers came to Blount's cell door and asked to see his "Kufi, prayer rug or Qur'an." Blount explained that his Qur'an and Islamic book had been confiscated and not returned by the property staff. The officers informed him that if he did not have one of the listed items, he would not be allowed to participate in the Ramadan fast, which begins on August 11, 2010.

According to Blount, the three other inmates he has listed as plaintiffs were also informed that they would not be allowed to participate in Ramadan unless they possessed one of the required religious items. All four of them signed up for Ramadan accommodations in June 2010. Only Blount has signed the complaint and the motion to amend, stating that he has the "consent" of the other inmates to litigate on their behalf. He moves to proceed in forma pauperis, although none of the inmates has provided any evidence in support of this motion. He also seeks appointment of counsel to assist the inmates in pursuing this litigation.

## II. Discussion

### A. Co-Plaintiffs

As an initial matter, Blount cannot be allowed to litigate on behalf of the other inmates he has listed as plaintiffs. See Hummer v. Dalton, 657 F.2d 621, 625-626 (4th Cir. 1981) (holding that a prisoner proceeding pro se may not serve as a "knight errant" for other inmates, but may only seek to enforce his own rights); Inmates v. Owens, 561 F.2d 560 (4th Cir. 1977) (to state civil rights claim, plaintiff must allege facts demonstrating that he himself has sustained, or will sustain, deprivation of right, privilege or immunity secured by the constitution or federal law). See also Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 166 (1972)(a litigant "has standing to seek redress for injuries done to him, but may not seek redress for injuries done to others"). Moreover, none of these other inmates has signed the complaint, and as such, they have not properly pleaded their claims before the court. See Fed. R. Civ. P. 11(a) (requiring pleading to be signed by each pro se party personally). Therefore, all claims raised on behalf of Inmates Boone and Goode will be summarily dismissed without prejudice, pursuant to § 1915A(b)(1), and the motion to amend to add Inmate Cotton as a co-plaintiff will be denied.

### B. Accommodation of Religious Practices

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under § 1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted." In reviewing

the case for possible summary dismissal, the court must accept factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. See De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003). The factual allegations in the complaint must contain "more than labels and conclusions" and "must be enough to raise a right to relief above a speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). After a review of Blount's allegations as amended, the court concludes that he fails to allege facts stating any plausible claim actionable under § 1983.

The Free Exercise Clause of the First Amendment guarantees an inmate the right to reasonable accommodation of his sincere, religious beliefs, including possession of religious literature and consumption of a diet consistent with his religious beliefs. See, e.g., Lovelace v. Lee, 472 F.3d 174, 198-99 (4th Cir. 2006); Ross v. Blackledge, 477 F.2d 616, 618-19 (4th Cir. 1973). Only personal practices that are both sincerely held and rooted in religious belief fall under the protections of the Free Exercise Clause. Wisconsin v. Yoder, 406 U.S. 205, 215-16 (1972). Moreover, in deference to the expertise of prison administrators in managing the difficult challenges of incarceration, even a prison policy that substantially burdens an inmate's ability to practice his religious beliefs withstands a First Amendment challenge so long as it is rationally related to a legitimate governmental interest. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Turner v. Safley, 482 U.S. 78, 89-91 (1987).[1] Where an inmate has

---

[1] Under Turner, the court must consider four factors in addressing an inmate's constitutional claim: (1) whether there is a "valid, rational connection" between the regulation and a legitimate and neutral governmental interest; (b) whether there are alternative means of exercising the asserted constitutional right that remain open to inmates; (c) whether the extent to which accommodation of the asserted right will have an impact on prison staff, on inmates' liberty and on the allocation of limited prison resources; and (d) whether the regulation represents an "exaggerated response" to prison concerns. Id. at 89-91.

demonstrated that it will substantially burden his religious belief to be denied the ability to participate in a particular religious practice, such as study of specific religious materials or celebration of Ramadan traditions, prison officials who "intentionally and without sufficient justification" deny the inmate accommodation of such practices violate his constitutional rights. Lovelace, 472 F.3d at 199.

Under these principles, Blount fails to demonstrate that the defendants have violated, or are violating, his sincerely held religious beliefs. First, Blount does not provide the court with any information whatsoever about his current religious beliefs or demonstrate that those beliefs require him to observe Ramadan or possess and study the books that prison officials confiscated.[2] Blount merely asserts that the deprivation of his books and of Ramadan participation will violate his beliefs. Such conclusory assertions, without facts alleged in support, are insufficient to state an actionable claim. Bell Atl. Corp., 550 U.S. at 555. Blount fails to allege facts demonstrating that his religious practice will be substantially burdened if he is not allowed to possess the confiscated literature or participate in the Ramadan fast. Lovelace, 472 F.3d at 199.

Second, even assuming that Blount could produce evidence sufficient to show that confiscation of the books and the inability to observe Ramadan poses a substantial burden to his religious beliefs, Blount fails to demonstrate that he provided prison officials with sufficient and timely information about his religious beliefs and practices so as to allow them to determine

---

[2] The court takes judicial notice of the fact that in at least two prior lawsuits, Blount claimed to be an adherent of the House of Yahweh. See, e.g., Blount v. Ray, Case No. 7:08CV00504 (W.D. Va. July 17, 2009); Blount v. Johnson, Case No. 7:0400429 (W.D. Va. 2007). The House of Yahweh is a religious faith with beliefs and practices showing similarities to both Christianity and Judaism. See "House of Yahweh." Wikipedia. the Free Encyclopedia. Web. 9 August 2010. http://en.wikipedia.org/wiki/House_of_Yahweh. Nothing in those prior lawsuits suggested that Blount's religious beliefs required him to study the Koran or other Islamic texts or to observe Ramadan, an Islamic religious fast.

whether his beliefs warranted the accommodations he now demands. Simply placing his name

on the Ramadan participation list does not provide any evidence that he holds sincere, religious

beliefs requiring him to practice this religious observance. Similarly, the mere fact that the

confiscated publications are religious in nature does not prove that Blount himself has a sincere,

religious belief that requires him to study these books. Defendants who have not been provided

evidence of an inmate's sincere, religious belief that requires him to participate in specific

religious practices cannot be said to intentionally deprive the inmate of accommodation of those

practices. Lovelace, 472 F.3d at 199. For these reasons, the court concludes that Blount fails to

allege facts stating a claim that defendants' actions violated, or will violate, his sincerely held

religious beliefs.[3]

Because interlocutory injunctive relief is an extraordinary remedy, the party seeking the

preliminary injunction must make a clear showing "(1) that he is likely to succeed on the merits;

(2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance

of equities tips in his favor; and (4) an injunction is in the public interest." Real Truth About

Obama, Inc. v. FEC, 575 F.3d 342, 346-47 (4th Cir. 2009) (quoting Winter v. Natural Resources

Defense Council, Inc., ___ U.S. ___, 129 S. Ct. 365 (2008)). Each of these four factors must be

satisfied before interlocutory injunctive relief is warranted. Id. at 347. Inasmuch as Blount's

allegations fail to state a claim actionable under § 1983, he fails to demonstrate that he has any

likelihood of success on the merits of his suit or that he will suffer irreparable harm in the

absence of preliminary injunctive relief as requested. Accordingly, the court will deny his

---

[3]  Blount admits that he did not exhaust available administrative before filing this lawsuit.
Accordingly, his claims may also be dismissed on that ground, pursuant to 42 U.S.C. § 1997e(a).

motion for interlocutory injunctive relief and will dismiss this action without prejudice, pursuant to § 1915A(b)(1), for failure to state a claim. An appropriate order will enter this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This ___10th___ day of August, 2010.

_____
Chief United States District Judge